**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 04-cv-2340-REB-BNB

UNITED STATES OF AMERICA, and
the STATE OF COLORADO,

    Plaintiffs,

v.

HEALTH CARE MANAGEMENT PARTNERS, LTD, (HCMP), d/b/a
O'HARA REGIONAL CENTER FOR REHABILITATION, limited partnership;
ORCR, INC. d/b/a O'HARA REGIONAL CENTER FOR REHABILITATION, INC., a corporation;
SOLOMON HEALTH MANAGEMENT, LLC, (Solomon), d/b/a SOLOMON HEALTH SERVICES, LLC,  limited liability companies;
HERSCH "ARI" KRAUSZ;
DAVID SEBBAG, and
V. ROBERT"ROB" SALAZAR, individuals,

    Defendants.

## ORDER CONCERNING DEFENDANT, ROBERT SALAZAR'S, MOTION TO DISMISS

**Blackburn, J.**

This matter is before me on the motion to dismiss the First Amended Complaint [#97] of defendant, Robert Salazar, filed March 1, 2005. I conclude that the motion should be granted in part and denied in part.

### I.  JURISDICTION

Under 28 U.S.C. § 1331, I have federal question jurisdiction over the plaintiffs' claim asserted under federal statutes.  Under 28 U.S.C. § 1367, I have supplemental jurisdiction over the plaintiffs' state law claims.

## II.  STANDARD OF REVIEW

When ruling on a motion to dismiss under FED. R. CIV. P. 12(b)(6), I must determine whether the allegations set forth in the complaint, if true, are sufficient to state a claim within the meaning of FED. R. CIV. P. 8(a).  "[T]he complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." **Conley v. Gibson,** 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); see **Daigle v. Shell Oil Co.**, 972 F.2d 1527, 1533 (10th Cir.1992).  The complaint must be construed in the light most favorable to plaintiff, and its allegations must be taken as true. **Robinson v. City and County of Denver** 39 F. Supp. 2d 1257, 1262-1263 (D. Colo. 1999) (citing **Daigle v. Shell Oil Co.**, 972 F.2d 1527, 1533 (10th Cir.1992)).  However, the court need not assume that the plaintiff "can prove facts which he has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." **Assoc. Gen'l Contractors v. Calif. State Council of Carpenters**, 459 U.S. 519, 526 (1983).  Some of the plaintiffs' claims sound in fraud.  Such claims must be pled under the more demanding standard of FED. R. CIV. P. 9(b), which requires that the circumstances constituting fraud be "stated with particularity."

## III.  PROCEDURAL STATUS & FACTS

Salazar's motion to dismiss the First Amended Complaint is nearly identical to his motion to dismiss the original complaint [#25], filed March 1, 2005.  The Amended Complaint adds four paragraphs to the Statement of Facts.  Two of the new paragraphs provide additional factual detail concerning Salazar's actions related to plaintiffs' claims (Paragraphs 15 and 59).  Two other new paragraphs provide additional detail

concerning the bad effects of the defendants' alleged actions and inactions (Paragraphs 45 and 46). In addition, there are several minor corrections made to several other paragraphs.

    Salazar's original motion to dismiss was mooted by the filing of the First Amended Complaint. The plaintiffs have not yet filed a response to Salazar's motion to dismiss the First Amended Complaint. However, the plaintiffs filed a comprehensive response to Salazar's motion to dismiss the original Complaint. In the context of the issues raised in Salazar's motions to dismiss, the amendments to the Complaint are of little or no import. I have considered carefully the plaintiffs' response to Salazar's motion to dismiss the original Complaint, and I have reviewed carefully the new allegations in the First Amended Complaint. Because the key issues in the two motions to dismiss are not materially changed by the new allegations in the First Amended Complaint, I will resolve the motion to dismiss the First Amended Complaint without a response from the plaintiffs.

    This description of the facts is derived from the First Amended Complaint (Complaint), and assumes the allegations in the Complaint to be true. I will refer to the Complaint by paragraph number (¶ 1). The plaintiffs, the United States and the State of Colorado, allege that the defendants violated the False Claims Act, and defrauded both the United States and the State of Colorado, by billing Medicare and Medicaid for inadequate care provided by a nursing home. The nursing home was known as O'Hara Regional Center for Rehabilitation. Defendant, Solomon Health Management, LLC, supervised, directed, and controlled the daily management of O'Hara's operations

during the relevant period of time. Defendant, Robert Salazar, was an owner, President, and Chief Executive Officer of Solomon.

O'Hara was classified as a Class V facility, which meant O'Hara was certified by the State of Colorado to provide care to residents who required a greater quantity and quality of skilled nursing care than an ordinary nursing home could provide. O'Hara admitted patients with conditions such as traumatic brain and spinal cord injuries, disabling strokes, complex orthopedic disabilities, and ventilator dependent and tracheostomy patients. Because of the intensive needs of O'Hara's patients, a high number of registered nurses (RNs) and licensed practical nurses (LPNs) was needed to supervise and manage the care of O'Hara's residents. In addition, 24-hour RN coverage was required. Because O'Hara claimed to provide this high level of care, Medicaid paid almost twice the reimbursement rate it paid for patients in other skilled nursing facilities.

The defendants routinely and intentionally provided inadequate nursing staff at O'Hara. For example, from September, 1997, through November, 1998, O'Hara's internal nurse staffing policy indicated that its residents required somewhere between 6.0 and 6.6 hours of direct nursing care par patient per day (PPD). ¶ 36. By May, 1998, the defendants had reduced O'Hara's nursing budget to about 4.53 hours PPD. ¶ 38. At various times between September, 1997, and July, 2000, nursing staff at O'Hara fell below the 4.53 hours PPD level, and at various times the defendants failed to provide 24-hour RN nursing coverage at O'Hara. ¶¶ 40 - 41. The individual defendants, including Salazar, "had ownership and management control over the corporate defendants. [They] controlled staffing, budget, compensation, and hiring and

4

firing decisions at O'Hara." ¶ 47. They routinely were aware of nurse staffing levels at O'Hara. ¶ 49.

Every two weeks, Solomon collected data about O'Hara residents and prepared Medicare and Medicaid claims for each resident. ¶ 91. Solomon transmitted the Medicare and Medicaid claims for each resident to the relevant agencies of the State of Colorado and the United States. ¶ 92. Each of the defendants knew that these Medicare and Medicaid claims routinely were submitted every two weeks. ¶ 96. Because of the gross nursing under staffing at O'Hara, the claims submitted between September 1, 1997, and late June, 2000, allegedly were false and fraudulent. This is so, the plaintiffs allege, because the goods and services for which O'Hara sought payment either were not provided to O'Hara patients, or were inadequate or worthless. ¶ 97. The individual defendants knew that O'Hara and Solomon continued to submit claims for payment from Medicare and Medicaid which falsely represented that appropriate care was being provided to O'Hara's patients. ¶ 102.

Based on these allegations, the plaintiffs assert eight claims for relief against Salazar:

  1. False Claims Act - 31 U.S.C. § 3729(a)(1) (False Medicare & Medicaid Claims);

  2. False Claims Act - 31 U.S.C. § 3729(a)(2);

  3. False Claims Act - 31 U.S.C. § 3729(a)(1) (Medicaid Hospital Back-Up claim);

  4. Payment by mistake of fact;

  5. Unjust enrichment;

  6. Common law fraud;

5

      7. Restitution and disgorgement of illegal profits, imposition of a constructive trust; and

      8. Negligent misrepresentation (ninth claim for relief).

Salazar moves to dismiss each of these claims, arguing that the allegations in the Complaint are not sufficient to state a claim on which relief can be granted, and that some of the claims are time barred.

## I.  FALSE CLAIMS ACT

The plaintiffs' first, second, and third claims for relief are brought under the False Claims Act, 31 U.S.C.A. § 3729.  Section 3729 provides, in relevant part:

> Any person who--
>
> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
>
>                               * * * *
>
> is liable to the United States Government (for damages and a civil penalty).

Salazar argues that the facts alleged in the complaint do not show that he presented or caused to be presented a claim for payment to the United States, or that any claim presented was false or fraudulent.  In addition, with regard to the claim under subsection (2), Salazar argues that the plaintiffs have not alleged that he made or used a false statement that he knew to be false in order to get a claim paid by the government.  The parties agree that an FCA claim sounds in fraud, and must be pled with the particularity required by FED. R. CIV. P. 9(b).

6

### A. § 3729(a)(1) - Presentation of a Claim

Claims one and three both allege violations of § 3729 (a)(1).  Claim one alleges that false claim were submitted for O'Hara residents generally.  Claim three alleges that false claims were submitted under the Medicaid hospital back-up program for one particular patient.

Liability under § 3729(a)(1) cannot be based on a defendant's knowledge that others are submitting false claims.  ***U.S. v. Bornstein***, 423 U.S. 303, 313 (1976).  Rather, the plaintiff must allege and prove "some action by the defendant whereby the claim is presented or caused to be presented."  ***U.S. v. Murphy***, 937 F.2d 1032, 1039 (6th Cir. 1991) (citing ***Bornstein***, 423 U.S. at 313); ***see also U.S. v. President and Fellows of Harvard College***, 323 F. Supp.2d 151, 189 (D. Mass. 2004) ("even if defendant knew or should have known about the claims process, and even if he knew that false claims were going to be submitted, his failure to take steps to ensure that Harvard discontinued the submission of the claims does not constitute 'causation' under the False Claims Act.").

In the present case, the plaintiffs have alleged two specific actions taken by Salazar.  First, Salazar is alleged to have approved a bid in October, 1997, to provide services for one patient.  ¶¶ 104 - 106.  Second, Salazar is alleged to have directed O'Hara not to use temporary nursing services, in a directive issued in August, 1998.  ¶ 52.  More generally, Salazar and the other individual defendants are alleged to have known about the chronic inadequate staffing at O'Hara, and to have known that Medicare and Medicaid claims routinely were being submitted for inadequate care provided at O'Hara.  ¶¶ 96 - 108.  Under the pleading standard of FED. R. CIV. P. 9(a)

7

and the cases cited above, these factual allegations are not sufficient to allege that Salazar knowingly presented or caused to be presented false claims. A general allegation that Salazar presented false claims, or caused such claims to be presented, is not sufficient. Rather, the plaintiffs must allege specific facts to support this general allegation. The Complaint does not contain such specific allegations detailing Salazar's alleged actions.

### B.  § 3729(a)(2) - Use of False Records or Statements

Similarly, the plaintiffs have not alleged specific facts indicating that Salazar "knowingly made, used, or caused to be made or used, false records or statements" in support of Medicare or Medicaid claims. The plaintiffs do allege a variety of false records and statements made or presented to various government officials which misrepresented staffing levels at O'Hara. However, the Complaint does not contain specific factual allegations indicating that Salazar made such statements or created such records, or that he caused such statements or records to be made or used. Again, the plaintiff's general allegations must be supported by specific allegations concerning Salazar.

### C.  False and Fraudulent Claims

Salazar argues also that the Complaint does not sufficiently allege that the claims in question were false or fraudulent. The plaintiffs do not allege that the patients who were the subject of the claims in question were not receiving care at O'Hara. Rather, the government alleges that the care received by these patients was grossly inadequate because nursing staff levels at O'Hara were grossly inadequate. As a result, the claims were for "care, goods or services that were not provided, were

8

inadequate or worthless, or which were provided at a time when Defendants' actions had forfeited their right to claim payment." ¶ 97.  In other words, many of the services provided at O'Hara were medically worthless, yet the defendants submitted claims for those worthless services.

The plaintiffs properly describe their FCA claims as worthless services claims and implied certification claims.  Billing the government for worthless medical services, if done with the requisite scienter, violates the FCA.  "In a worthless services claim, the performance of the service is so deficient that for all practical purposes it is the equivalent of no performance at all."  **Mikes v. Straus**, 274 F.3d 687, 703 (2nd Cir. 2001) (dictum) (***citing U.S. ex rel. Lee v. SmithKline Beecham, Inc***., 245 F.3d 1048 (9th Cir.2001)).  The key question presented by a worthless services claim, in the context of medical care, is whether the services provided were so deficient as to be medically worthless.  The plaintiffs adequately have alleged that the medical services provided by O'Hara were so deficient as to be medically worthless.

A defendant also may be liable under the FCA under a false certification theory.  A false certification claim may be established if the defendant provides goods or services, the goods or services were provided in violation of a condition of payment, and a claim was submitted to the government for payment for the goods or services.  The false certification need not be explicit.  Rather, a certification that the goods or services complied with a condition of payment can be implied from the defendants' request for payment.  **Shaw v. AAA Engineering & Drafting, Inc**., 213 F.3d 519, 531 - 533 (10th Cir. 2000) (false implied certification may constitute a false or fraudulent claim under the FCA).  The allegations in the Complaint are sufficient to allege that the

9

defendants impliedly certified O'Hara's goods and services as compliant with the relevant requirements, and that those goods and services were not compliant with those requirements.

Salazar argues that the government was aware of O'Hara's non-compliance, but permitted the claims to be paid despite this knowledge. In these circumstances, Salazar argues, the plaintiffs cannot claim that Salazar falsely represented that O'Hara was compliant with the relevant requirements. The Complaint does indicate that government officials were aware of some aspects of O'Hara's non-compliance at certain points in time. However, the plaintiffs allege also that the defendants took active measures to conceal O'Hara's non-compliance, and that these measures were successful to a substantial degree. Given these allegations, the plaintiffs sufficiently have alleged that the defendants falsely certified that O'Hara provided care in compliance with the applicable requirements.

## II.  COMMON LAW FRAUD

Salazar argues that the plaintiffs' common law fraud claim must be dismissed because the plaintiffs have not alleged that Salazar made any factual representations to a government official. One of the elements of a false representation, or fraud, claim under Colorado law is that the defendant made a false representation of a past or present material fact. CJI-Civ. 4th 19:1. I agree that the plaintiffs have not alleged that Salazar made any factual representations to a government official.

Colorado recognizes fraud claims based on a defendant's failure to disclose material information when the defendant has a duty to disclose the information. CJI-Civ. 4th 19:5. The plaintiffs have alleged that Salazar was aware of material

information, the chronic under staffing at O'Hara and the resulting inadequate care, and was aware that this information was not disclosed to the plaintiffs. Further, the plaintiffs allege that Salazar knew claims routinely were submitted to the plaintiffs based in the implied representation that the care provided at O'Hara met the relevant standards, including a high level of nursing care. These facts have been pled with sufficient specificity to state a claim for fraudulent non-disclosure against Salazar.

### III. STATUTE OF LIMITATIONS

Salazar argues that portions of the FCA claims are barred by the applicable statutes of limitation. An FCA claim may be filed either six years after the date of the violation, or up to ten years after a violation if the complaint is filed within three years after the date when facts material to the right of action are known or reasonably should have been known. 21 U.S.C. § 3731(b)(1),(2). The Complaint was filed on November 10, 2004.

Salazar argues that FCA claims based on Medicare and Medicaid claims filed before November 10, 1998, the date six years prior to the filing of the Complaint, are barred. He notes that the Complaint includes allegations describing the government's November, 1998, survey of O'Hara, which found serious staffing deficiencies at O'Hara. *Motion to dismiss*, p. 12 - 13. The plaintiffs allege also that the defendants actively misrepresented the status of nursing staff levels at O'Hara following the November, 1998, survey. Given these misrepresentations, November, 1998, is not necessarily the date on which the plaintiffs' FCA claims accrued. Salazar argues also that O'Hara and Solomon's September 24, 2001, production of documents to the United States pursuant to a subpoena marks the time when the government knew of the facts material to its

11

FCA claims, or reasonably should have known those facts. This may or may not be true. The Complaint contains no allegations about the documents produced in 2001. On the current record, I cannot determine whether the plaintiffs' claims accrued when O'Hara and Solomon produced documents to the government in September, 2001.

Assuming the factual allegations in the Complaint to be true, including the allegations that the defendants actively concealed material facts from the plaintiffs, I cannot determine the point in time when the plaintiffs reasonably should have known the facts that form the basis of their FCA claims. Thus, I cannot conclude that any part of the FCA claims are barred by the applicable statute of limitations.

Salazar argues also that the common law fraud claim and negligent misrepresentation claims are barred by the applicable statute of limitations. The applicable period of limitations for claims brought by the United States is found in 28 U.S.C. § 2415. Under subsection (a), actions founded on contract must be brought within six years after the cause of action accrues. Under subsection (b), actions founded on tort are barred unless filed within three years after the cause of action accrues. Under 28 U.S.C. § 2416(c), a cause of action accrues when facts material to the right of action are known or reasonably should be known by an official of the United States charged with responsibility to act in the circumstances.

The plaintiffs argue, without citation of authority, that subsection (a) is applicable to the common law fraud claim, while the plaintiff argues that subsection (b) controls. Generally, fraud is a tort claim. Absent authority to the contrary, I conclude that the three year limitations period of subsection (b) applies to the plaintiffs' common law fraud claim. ***U.S. v. Intrados/Intern. Management Group***, 265 F.Supp.2d 1, 14

(D.D.C. 2002) (limitations period of § 2415(b) applicable to common law fraud claim associated with False Claims Act claims).  Similarly, negligent misrepresentation is a tort claim, and the three year period of limitations of subsection (b) applies to this claim.

Solomon and Salazar were involved in the management of O'Hara until June, 2000.  ¶ 7.  The fraudulent claims with which Solomon and Salazar allegedly were connected all were filed before July, 2000.  ¶ 93.  The allegations in the Complaint do not indicate that the plaintiffs were aware of the facts underlying the alleged fraud at that time, or when the defendants produced documents under a subpoena in September, 2001.  Absent allegations which demonstrate when the United States' common law fraud claim accrued, I cannot determine whether this claim should be dismissed because it is barred by the applicable statute of limitations.  The same is true of the negligent misrepresentation claim.  Given this uncertainty, Salazars' motion to dismiss the United States' fraud claim as barred by the statute of limitations must be denied.

The fraud claim brought by the State of Colorado is controlled by §13-80-101(1)(c), C.R.S., which provides for a three year period of limitations for such claims. The negligent misrepresentation claim brought by the State of Colorado is controlled by §13-80-102(1)(a), C.R.S., which provides a two year period of limitations for such claims.  Such claims accrue under Colorado law on essentially the same basis as outlined in 28 U.S.C. § 2416(c).  Absent allegations which demonstrate when the State of Colorado's common law fraud claim accrued, I cannot determine whether this claim should be dismissed because it is barred by the applicable statute of limitations.  The same is true of the negligent misrepresentation claim.

13

## IV. EQUITABLE CLAIMS

The plaintiffs assert three claims under equitable theories: payment by mistake (claim 4), unjust enrichment (claim 5), and restitution and disgorgement of illegal profits (claim 7). Salazar argues that the payment by mistake and unjust enrichment claims fail because the plaintiffs do not allege that Salazar received any direct payments from the government, or that he participated directly in the submission of claims for those payments.

The first element required to establish an unjust enrichment claim is that the plaintiff has conferred a benefit on the defendant. ***See, e.g., Kennedy v. Hudon***, 659 F. Supp. 900, 906 (D. Colo. 1987). Under the Colorado rule, as discussed in ***Kennedy***, if the party conferring the benefit does so pursuant to a contract with a third party, then the nonperformance of the contract by the third party does not entitle the party conferring the benefit to repayment from the recipient of the benefit. ***Id***. (citing ***Restatement of Restitution*** § 110 (1937)).

The plaintiffs allege that the Medicare and Medicaid payments in question were paid to O'Hara. ¶ 109. Solomon had a management agreement with O'Hara. Presumably Solomon was paid for the services it provided, but the plaintiffs do not specifically allege that O'Hara paid Solomon. There is no allegation indicating that Salazar was paid by Solomon or O'Hara. Assuming Salazar was paid by Solomon, that fact is not sufficient to support an unjust enrichment claim. As noted in ***Kennedy***, a benefit conferred on a defendant (Salazar) is not recoverable under an unjust enrichment theory when the benefit is alleged to have been unjustly conferred because

of the non-performance of a third party (O'Hara).  659 F. Supp. 906.  Absent a payment directly from the plaintiffs to Salazar, the plaintiffs' unjust enrichment claim fails.

For similar reasons, the plaintiffs' payment by mistake claim fails.  Generally, mistaken payments that have flowed into the hands of a third party may be recovered if the third party 1) participated in and 2) benefitted from the transaction.  ***LTV Education Systems, Inc. v. T.H. Bell***, 862 F.2d 1168, 1175 (5th Cir.1989).  Both participation and benefit have been present in other cases in which the government has been permitted to recover mistaken payments from third parties who had received the benefit of the mistaken payment.  ***See, e.g., U.S. v. Mead***, 426 F.2d 118, 124 - 125 (9th Cir. 1970); ***Drew Chemical Corp. v. M/V Pacific Horizon***, 84 F.R.D. 127, 129 (D.C. Canal Zone 1979) (participation of third party when direct recipients of payments acted on behalf of third parties), ***citing Mead***, 426 F.2nd at 124.

Under the pleading standards of FED. R. CIV. P. 8, the plaintiffs' allegations that Salazar caused Medicare and Medicaid claims to be submitted are sufficient to allege Salazar's participation in the relevant transactions.  However, there are no allegations in the Complaint indicating that Salazar benefitted from the payments allegedly made by the government.  Absent such allegations, the plaintiffs' mistaken payment claim fails.

Finally, Salazar argues that the plaintiffs' claim 7, a claim for restitution, disgorgement of profits, and imposition of a constructive truest and an accounting should be dismissed because restitution, disgorgement, and constructive trust are not independent claims, but are forms of relief which may be granted if certain underlying claims are established.  I agree.  Claim 7 should be dismissed as an independent

claim. However, the forms of relief described in claim 7 may be available if the plaintiffs prevail on a claim or claims which would justify such relief.

## V.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That under FED. R. CIV. P. 12(b)(6), defendant, Robert Salazar's, motion to dismiss the First Amended Complaint [#97], filed October 17, 2005, is **GRANTED** as to the first, second, third, fourth, fifth, and seventh claims for relief in the First Amended Complaint;

2. That defendant, Robert Salazar's, motion to dismiss the First Amended Complaint [#97], filed October 17, 2005, otherwise is **DENIED**;

3. That  defendant, Robert Salazar's, motion to dismiss [#25], filed March 1, 2005, is **DENIED** as moot; and

4. That the plaintiffs **MAY FILE** a second amended complaint on or before **November 18, 2005**.

Dated October 31, 2005, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge

16