IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 04-cv-02340-REB-BNB

UNITED STATES OF AMERICA, AND
THE STATE OF COLORADO,

Plaintiffs,

v.

HEALTH CARE MANAGEMENT PARTNERS, LTD., (HCMP), d/b/a O'HARA REGIONAL
CENTER FOR REHABILITATION, a limited partnership,
ORCR, INC., d/b/a O'HARA REGIONAL CENTER FOR REHABILITATION, INC., a
corporation,
SOLOMON HEALTH MANAGEMENT, LLC (Solomon), d/b/a SOLOMON HEALTH
SERVICES, LLC, limited liability companies,
HERSCH "ARI" KRAUSZ,
DAVID SEBBAG, and
V. ROBERT "ROB" SALAZAR, individuals

Defendants.

_____

**ORDER**

_____

This matter is before me on the following:

(1)     **Defendant V. Robert Salazar's Motion to Compel Discovery Propounded to**

**Plaintiffs** [Doc. # 109, filed 11/2/2005] ("Salazar's Motion to Compel");

(2)     **Defendant V. Robert Salazar's Motion for Protective Order** [Doc. # 116, filed

11/4/2005] ("Salazar's Motion for Protective Order");

(3)     **Defendants' Motion to Strike Paragraph 110 of Plaintiffs' Second Amended**

**Complaint Pursuant to Fed. R. Civ. P. 12(f)** [Doc. # 166, filed 12/16/2005] (the "Motion to

Strike");

(4)     The United States' **Motion Requesting Order Compelling Testimony Pursuant to Title 18, United States Code, Sections 6001-6003** [Doc. # 173, filed 12/19/2005] (the "Motion to Compel Testimony"); and

(5)     **Plaintiffs' Motion for Protective Order and Request to Exceed the Seven Hour Limitation for Discovery Regarding the Deposition of Sally Scaman** [Doc. # 175, filed 12/20/2005] (the "Plaintiffs' Motion for Protective Order").

I will address the motions in the order they were filed.

## 1.  SALAZAR'S MOTION TO COMPEL

In a poorly crafted motion which does not comply with the requirements of D.C.COLO.LCivR 37.1, defendant Salazar seeks an order that the plaintiffs "produce the complete OIG investigation and the investigation of the Colorado Medicaid Fraud Control Unit, as discussed above, with all of their references, attachments, and exhibits, and to answer the interrogatories and produce documents as otherwise requested in Salazar's Written discovery, as detailed hereinabove."  Salazar's Motion to Compel at Part V.  Defendant Salazar also requests in the body of the motion, but not in his conclusion where he specifies the relief sought, that the plaintiffs be required to produce a privilege log which identifies with particularity the materials withheld on a claim of privilege or pursuant to the work product immunity.  Salazar's Motion to Compel is GRANTED to require the plaintiffs to provide a more specific privilege log and is DENIED in all other respects.

2

### a. The OIG and Colorado Medicaid Fraud Control Unit Investigation Reports

In paragraph 6 of Salazar's Motion to Compel, Salazar appears to request the production of an investigation report captioned "U.S. Department of Health and Human Services, Office of Inspector General, Office of Investigations, Report of Interview," which he indicates is dated May 15, 2000; includes a five page "interview of Joida Makus conducted by SA Ed Mendicello"; and "seems to be identified as OI-3, Joida Makus, File # 7-B9-00822-9" (hereafter the "Makus Interview").

On November 2, 2005, Salazar filed the Makus Interview under seal. See *Defendant V. Robert Salazar's Unopposed Motion to File Under Seal Exhibit B to His Reply to Plaintiffs' Response to His Motion to Compel* [Doc. # 160, filed 12/8/2005] (hereafter the "*Motion to Seal*"), Exh.A. Consequently, Salazar possesses a copy of the report he seeks to compel. Salazar's Motion to Compel is DENIED insofar as it seeks a copy of the Makus Interview.

In paragraph 7 of Salazar's Motion to Compel, Salazar apparently seeks the production of an investigation report captioned "Combined Reports of Investigation," which he indicates is dated November 30, 2000; is 35 pages in length; was prepared by Margaret A. Ripko; and is labeled "with case numbers 6399000730 Jan Lee (Colton) Lozano RN, 6399000743 Patricia Hilton RN, 6399000744 Kathleen D. Smith RN, and 6399000745 Michelle A.M. Blymyer RN"(hereafter the "Ripko Report"). Salazar's Motion to Compel states further that "'[t]he documents [requested] include interviews of individuals the governments want to depose in this case, such as Larry Smith." Id.

On November 2, 2005, Salazar filed the Ripko Report under seal.  See *Motion to Seal*, Exh.B.  Consequently, Salazar also possesses a copy of this report.  Salazar's Motion to Compel is DENIED insofar as it seeks a copy of the Ripko Report.

The Ripko Report lists as attachments four letters of response, one each from Ms. Lozano, Ms. Hilton, Ms. Smith, and Ms. Blymyer.  *Motion to Seal*, Exh.B at p.3.  It also lists 24 documents as exhibits, including "[i]nterview[s]" with Sue Grant, Mike Curry, and Larry Smith.  Id.  None of the attachments or exhibits are included in the copy of the report filed under seal.[1]  Salazar's Motion to Compel requests production of these attachments and exhibits.

There is no discovery request which specifically calls for the production of the attachments and exhibits.  In fact, the only request for production of documents at issue in Salazar's Motion to Compel is Request for Production No. 5, which seeks the following:

> All correspondence and/or e-mails between Plaintiffs and John Holland, Kathleen Mullen, Eric Kibel, and/or Jay Reinan and anyone from their offices.

*Defendant V. Robert Salazar's Reply to Plaintiffs' Response to His Motion to Compel* [Doc. # 158, filed 12/8/2005] ("*Salazar's Reply*") at p.5.[2]  The attachments and exhibits to the Ripko

---

[1]The Ripko Report identifies as one of its exhibits the "[i]interview with Sue Grant, NHA, by Martha Maxwell."  Attached as Exhibit C to the *Motion to Seal* is a six page document captioned "Report of Interview" which is an interview with Susan Keohane Grant prepared by SA Ed Mendicello.  This interview of Ms. Grant was conducted by Special Agents Ed Mendicello and Dave Dechant, not by Martha Maxwell.  Although it is not entirely clear, Exhibit C to the *Motion to Seal* does not appear to be the interview referred to as an exhibit to the Ripko Report.

[2]At note 1 to his Reply, Salazar states specifically that he "does **not** at this time seek to compel further responses from Plaintiffs to . . . Requests for Production 1, 2, 3, and 4."  *Salazar's Reply* at p.1 n.1 (original emphasis).

Report are not correspondence or e-mails within the contemplation of Request for Production

No. 5.

Salazar claims, however, that the attachments and exhibits were required to be disclosed

by the plaintiffs pursuant to Fed. R. Civ. P. 26(a)(1), arguing:

> The statements by these witnesses and former employees of O'Hara
> [apparently referring to the four attachments and the three
> interviews itemized in the Ripko Report] are relevant to the claims
> and defenses of parties in this lawsuit, including Defendant Salazar.
> They should have been disclosed initially under Fed. R. Civ. P.
> 26(a) and certainly now when specifically requested by Defendant
> Salazar.  The Plaintiffs "relied" on those statements and other
> investigative materials when making their claims and were aware of,
> and presumably relied upon, those documents when responding to
> Defendant Salazar's motion to dismiss based upon the applicable
> statutes of limitations.

Salazar's Motion to Compel at p.6.

A party's duty to voluntarily disclose documents under Rule 26(a)(1)(B), Fed. R. Civ. P.,

extends to the following:

> [A] copy of, or a description by category and location of, all
> documents, data compilations, and tangible things that are in the
> possession, custody, or control of the party and **that the disclosing
> party may use to support its claims or defenses**, unless solely for
> impeachment. . . .

(Emphasis added.)

The plaintiffs have stated unequivocally in their response to Salazar's Motion to Compel

that they "do not have any intention to use these interview notes to support any motions or at

trial. . . ."  *Plaintiffs' Corrected Response to Defendant Salazar's Motion to Compel* [Doc. #

138, filed 11/3/0/2005] ("*Plaintiffs' Response*"), p.12.  Consequently, the plaintiffs had no

obligation under Rule 26(a)(1) to voluntarily produce the attachments or exhibits to the Ripko

Report.  Salazar's Motion to Compel is DENIED insofar as it seeks an order compelling the

disclosure of those attachments and exhibits.

Salazar also seeks the production of the interviews with Sue Grant, Mike Curry, and Larry

Smith, listed as Exhibits 20 through 22 to the Ripko Report, under Rule 26(b)(3), Fed. R. Civ. P.,

which allows a party to obtain from its opponent any "statement concerning the action or its

subject matter previously made by that party."  A "statement" within the meaning of Rule

26(b)(3) is narrowly defined, however, to include only:

> (A) a written statement signed or otherwise adopted or approved by the
> person making it, or (B) a stenographic, mechanical, electrical, or other
> recording, or a transcription thereof, which is a substantially verbatim
> recital of an oral statement by the person making it and contemporaneously
> recorded.

There is no evidence or other indication that the "interviews" with  Sue Grant, Mike Curry, and

Larry Smith referred to in the Ripko Report meet the limited definition of a statement under Rule

26(b)(3), and the plaintiffs state that they do not.  Plaintiffs' Response at p.13.  To the contrary,

according to the plaintiffs:

> The United States and its agents have conducted dozens of
> interviews of individuals believed to have information concerning
> the underlying issues in this case. . . .  These reports of interviews
> were prepared by Special Agent Ed Mendicello, HHS-IG, Criminal
> Investigator Dave Dechant (MFCU), and Criminal Investigator
> Tony Matthew (MFCU). . . .  The reports are not signed, adopted
> or endorsed by the witnesses.  They also are not tape recorded,
> stenographically recorded, are not verbatim statements [sic].

Salazar's Motion to Compel, Exh.10 at p.4.

In any event, Salazar has not made a discovery request for the interviews and, as noted

above, they are not subject to the voluntary disclosure requirements of Rule 26(a)(1).

Accordingly, Salazar's Motion to Compel is DENIED insofar as it seeks an order compelling the production of the interviews as statements under Fed. R. Civ. P. 26(b)(3).

In paragraph 8 of Salazar's Motion to Compel, Salazar apparently seeks the production of the following:

> "[A] *U.S. Department of Health and Human Services, Office of Inspector General, Office of Investigations, Report of Interview*, regarding a January 6, 2000 interview of Susan Keohane Grant by SA Ed Mendicello and Dave Dechant from the Colorado Fraud Control Unit." The letter identifies this last item as a six page report "related to Case number 6-99-00822-9" prepared January 7, 2000 by Mr. Mendicello.

This document was filed by Salazar under seal on December 8, 2005, see *Motion to Seal* at Exh.C, and Salazar obviously has a copy of it. Salazar's Motion to Compel is DENIED insofar as it seeks an order compelling the production of this document.

### b.  Plaintiffs' Responses to Written Discovery Requests

Local rule of practice 37.1, D.C.COLO.LCivR, requires the following in connection with discovery motions:

> A motion under Fed. R. Civ. P. 26 or 37 directed to interrogatories or requests under Fed. R. Civ. P. 33 or 34 or to responses thereto shall set forth verbatim the interrogatory, request, and response to which the motion is directed.

This requirement frequently is satisfied by the moving party attaching as an exhibit to the discovery motion a copy of the disputed discovery requests or responses. Where this approach is used, however, the moving party has an obligation to direct me to the precise discovery request or response in dispute.

Salazar failed to meet the requirement of D.C.COLO.LCivR 37.1 insofar as it requires the moving party to identify the precise discovery to which his motion to compel is directed. Instead,

Salazar merely attached to his motion to compel his non-pattern interrogatories and request for production, which includes 15 interrogatories and five requests for production, Salazar's Motion to Compel at Exh.1; the plaintiffs' responses to those non-pattern discovery requests, id. at Exh.2; and six letters between the parties addressing their various discovery disputes. Id. at Exhs. 3-8. Salazar's Motion to Compel does not provide any guidance, but instead requests in extreme generality that the plaintiffs be compelled "to answer the interrogatories and produce documents as otherwise requested in Salazar's written discovery, **as detailed hereinabove**." Salazar's Motion to Compel at p.10 (emphasis added).

The only discovery request addressed in any detail in Salazar's Motion to Compel is Interrogatory No. 1. I have reviewed the plaintiffs' supplemental response to Interrogatory No. 1, and I find that the interrogatory has been answered. See Salazar's Motion to Compel, Exh.11 (*Plaintiffs' First Supplemental Responses to Defendant V. Robert Salazar's Non Pattern Interrogatories and Request for Production of Documents to Plaintiffs*) at pp.2-5. Salazar does not disagree; note 1 to Salazar's Reply states that he "does **not** at this time seek to compel further responses from Plaintiffs to" Interrogatory No. 1.

For the first time in his reply, Salazar specifies that he seeks an order compelling further responses to Interrogatories No. 2, 6, 7, 14, 15, and Request for Production No. 5. The plaintiffs have not had an opportunity to respond to these late-identified disputed discovery requests, and it would be fundamentally unfair for me to address matters raised for the first time in Salazar's Reply. To rule otherwise would ignore and reward Salazar's failure to comply with D.C.COLO.LCivR 37.1.

Salazar's Motion to Compel is DENIED insofar as it seeks an order compelling further responses to *Defendant V. Robert Salazar's Non Pattern Interrogatories and Request for Production of Documents to Plaintiffs.*

### c. Plaintiffs' Privilege Log

The plaintiffs have withheld documents from production based on a claim of work product immunity. In connection with that, the United States provided to the defendants on October 27, 2005, the *United States' Description of Documents Pursuant to Fed. R. Civ. P. 26(b)(5)* (the "Privilege Log"). The Privilege Log identifies the following categories of materials which the United States has withheld from production: (1) Reports of Interviews; (2) Reports of Investigative Activities; and (3) Notes and Reports of Communications with John Holland, Kathleen Mullen, Eric Kibel, and/or Jay Reinan. Salazar's Motion to Compel at Exh.10. There is no greater specificity as to the documents withheld, including particularly no itemization of specific documents withheld; the date they were created; their author and known recipients; their current location; and the like. See Fed. R. Civ. P. With respect to the category of "Reports of Interviews," the United States asserts that it "objects that a detailed log of all of the interviews conducted would, in and of itself, constitute protected work product concerning Plaintiffs' thought process in the pursuit of the investigation." Id., Exh. 10 at p.4.

A party seeking to assert the work product immunity must make a clear showing that it applies. Peat, Marwick, Mitchell & Co. v. Penn Square Bank, 748 F.2d 540, 542 (10th Cir. 1984). It is well settled that the party seeking to invoke the work product immunity has the burden to establish all elements of the immunity, and this burden can be met only by an evidentiary showing based on competent evidence. American Casualty Co. of Reading, Pennsylvania v.

Healthcare Indemnity, Inc., 2001 WL 1718275 at *2 (May 21, 2001).  The burden cannot be

discharged "'by mere conclusory or ipse dixit assertions.'"  Id.  Instead, the party asserting the

immunity must describe the nature of the documents or communications not disclosed in a manner

that enables the other parties to assess the applicability of the claim.  Imperial Corp. of America v.

Durkin, 174 F.R.D. 475, 477 (S.D. Calif. 1997).  This is most often accomplished by preparing a

document-by-document privilege log that identifies each document; describes each document in

general terms; and states the basis for the privilege or immunity.  Id.  To establish the applicability

of the work product immunity, the plaintiffs must show that (1) the materials sought to be

protected are documents or tangible things; (2) they were prepared in anticipation of litigation or

for trial; and (3) they were prepared by or for a party or a representative of that party.  American

Casualty Co., 2001 WL 1718275 at *2.

        The bare-bones Privilege Log supplied by the United States in this case is insufficient to

meet the requirements of Rule 26(b)(5).  In particular, it does not describe the nature of the

documents or communications in a manner that enables the defendants to assess the applicability

of the work product claim.  Among other things, there are no dates provided, so it is impossible

to determine, for example, whether the materials were prepared in anticipation of litigation or for

trial.

        Although it is true that under certain circumstances it may not be necessary to produce a

document-by-document privilege log, as for example where to do so would be unduly

burdensome, Imperial Corp., 174 F.R.D. at 477-78, that is not the case here.  The plaintiffs assert

only, and without any specific evidence, that "[t]he protected materials consist of hundreds of

pages of documents." *Plaintiffs' Response* at p.11. Although the withheld documents may comprise hundreds of pages, there is no indication of the number of documents withheld.

Nor am I persuaded that the mere disclosure of the names of the people interviewed by the plaintiffs is sufficient to disclose their thought processes.

Salazar's Motion to Compel is GRANTED to require the plaintiffs to prepare a privilege log which describes the nature of the documents and communications withheld in a manner that enables the defendants to assess the applicability of the work product claim and which establishes that each element of the work product immunity is present with respect to the materials withheld.

## 2.  SALAZAR'S MOTION FOR PROTECTIVE ORDER

The plaintiffs possess "a collection of letters and other privileged documents from the files of a former attorney for Solomon Health Services and certain other companies owned by co-defendants Krausz and Sebbag, which letters were written not in the present lawsuit but in another lawsuit ('Kilbourne') which was resolved nearly five years ago" (the "Privileged Documents"). Salazar's Motion for Protective Order, pp.1-2. Although it is not clear how the Privileged Documents were disclosed or came into the possession of the plaintiffs, Salazar seeks a protective order requiring the "immediate return" of the documents and prohibiting the plaintiffs, their counsel, and all witnesses "from reviewing, referring to, relying upon or utilizing any or all" of the documents. Id. at p.14.

Neither Salazar's Motion for Protective Order nor any of the related filings specify precisely the documents which are the subject of the motion. The Privileged Documents are described generally by Salazar as "a number of letters" sent by Paul Collins "to his clients and their insurers, including CNA, concerning the *Kilbourne* claims and their settlement position." Id.

at p.3.

The Privileged Documents apparently originated from Paul Collins.  Mr. Collins represented Health Care Management Partners, Ltd.; ORCR, Inc.; Solomon Health Services, LLC; and Solomon Health Management, LLC, in the case captioned <u>Kilbourne, et al. v. Health Care Management Partners, Ltd., et al.</u>, Civil Action No. 99-CV-2232, which proceeded in the District Court for the City and County of Denver, State of Colorado (the "Kilbourne Action"). The Kilbourne Action was brought by a group of nursing home residents[3] against Health Care Management Partners, Ltd.; ORCR, Inc.; Solomon Health Services, LLC; Solomon Health Management, LLC; and their principals, Ari Krausz, David Sebbag, and Salazar.

According to the Salazar:

> As the *Kilbourne* lawsuit neared resolution in mid-2000, an insurance coverage dispute arose in federal district court regarding the pending settlement of the *Kilbourne* suit.  One of the O'Hara defendants' insurers, CNA, filed a lawsuit seeking a declaration that CNA was not legally obligated to defend or indemnify against the *Kilbourne* plaintiffs' 1999 claims.  The defendants filed counterclaims against CNA for bad faith breach of insurance contract.  The *Kilbourne* plaintiffs intervened [asserting rights pursuant to a <u>Bashor</u> agreement], represented by John Holland.

Salazar's Motion for Protective Order at p.4.[4]

----

[3]The plaintiffs in the Kilbourne Action included Lorissa Denise Nuanez, Dorothy Alexander, James Wooten, Jay Baker, Sandy Blacketer, Joseph Timko, Judith Timko, Denae Timko, April Pitts, Beverly Sasse, Shirley Rose, Charlene Miller, Douglas Webb, Ronald Webb, Juan Martinez, Beverly James, and Elizabeth Zalinger.  Plaintiffs' Opposition at Exh.A to Att.A.

[4]As described by Salazar:

> A *Bashor* agreement is "a settlement reached between opposing parties after a judgment has been obtained," wherein the "prevailing party agrees not to execute on the judgment in exchange for the defendant's agreement not to appeal the judgment and instead to

The federal court case referred to is <u>Valley Forge Ins. Co. v. Solomon Health Services, LLC</u>, 00-cv-01184-WYD-MJW (the "Federal Action"), filed in this court.  The defendants in the Federal Action were Solomon Health Services, LLC, and OCRC, Inc., who were represented initially by Bradley A. Levin of Roberts, Levin & Patterson, and later by Richard B. Podoll of Podoll & Podoll, P.C.[5]  Also parties to the Federal Action, as intervenor-plaintiffs asserting the rights of Solomon Health Services and OCRC under the <u>Bashor</u> agreement, were the former plaintiffs in the state court Kilbourne Action.  <u>See</u> note 3, <u>supra</u>.  The Kilbourne plaintiffs were represented in the Federal Action by John R. Holland and Kathleen Mullen.

On March 14, 2001, the district judge entered a Revised Scheduling Order in the Federal Action.  *Plaintiffs' Opposition to Defendant Salazar's Motion for Protective Order Filed November 4, 2005* [Doc. # 131, filed 11/22/2005] (the "*Plaintiffs' Opposition*"), Exh.A to Att.2.  The Revised Scheduling Order contains the following statement concerning the parties' review of documents in the possession of the law firm of Treece, Alfrey, Musat & Bosworth, the firm where Mr. Collins worked and which represented Health Care Management Partners, Ltd.; ORCR, Inc.; Solomon Health Services, LLC; and Solomon Health Management, LLC, in the state court Kilbourne Action where the documents now in dispute originated:

As an initial matter, the parties have agreed to inspection and

pursue claims against third parties (and share any recovery with the original plaintiff)."

Salazar's Motion for Protective Order at p.5 n.4, <u>quoting</u> <u>Stone v. Satriana</u>, 41 P.3d 705, 708 n.2 (Colo. 2002).

[5]The record reflects that Mr. Levin and his colleagues, Thomas Roberts and Michael Carrigan, were granted leave to withdraw and that Mr. Podoll entered his appearance as substitute counsel on April 16, 2001.  *Minute Order* [Doc. # 73, filed 4/16/2001].

> production of the file materials of Treece, Alfrey, Musat &
> Bosworth, P.C., which defended Solomon and ORCR in the
> *Kilbourne* action, with the exception of any documents for which a
> privilege is asserted.

*Plaintiffs' Opposition*, Exh.A to Att.A at p.17.

Kathleen Mullen and John Holland, counsel for the Kilbourne plaintiffs, have provided an affidavit detailing how they came into possession of at least some of the Privileged Documents. According to Mullen and Holland, a letter from Paul Collins dated May 24, 2000, was voluntarily produced by CNA to the Kilbourne plaintiffs in the Federal Action; and a letter from Paul Collins dated July 27, 2000, was voluntarily given to Kathleen Mullin by Brad Levin, counsel for Solomon Health Services, LLC, and OCRC, Inc.  *Plaintiffs' Opposition*, Exh.1 to Att.2 at ¶¶2 and 4.

Initially, the plaintiffs argue that Salazar lacks standing to assert the attorney client privilege.  It is undisputed that Mr. Collins represented Health Care Management Partners, Ltd.; ORCR, Inc.; Solomon Health Services, LLC; and Solomon Health Management, LLC, in the Kilbourne Action.  There is no indication that he represented Salazar.  By contrast, Salazar's Motion for Protective Order is brought by Salazar individually, and not by any of the entities represented by Mr. Collins.[6]  Moreover, Salazar "divested his interest" in the entities represented by Mr. Collins "effective December 31, 2000."  Salazar's Motion for Protective Order at p.6 n.6.

Where, as here, the question concerns the power to assert or waive the attorney client privilege on behalf of a corporate client, the Supreme Court has held:

---

[6]Salazar's interest in the corporate defendants was indirect; he had "a partial interest in [Solomon Health Services] through a company which he owned, Salazar Capital Management. . . ."  Salazar's Motion for Protective Order at p.1 n.1.

14

> The administration of the attorney-client privilege in the case of corporations . . . presents special problems. As an inanimate entity, a corporation must act through agents. A corporation cannot speak directly to its lawyers. Similarly, it cannot directly waive the privilege when disclosure is in its best interest. Each of these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation.
>
> &ast;  &ast;  &ast;
>
> [W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.

Commodity Futures Trading Comm. v. Weintraub, 471 U.S. 343, 348-49 (1985). Consequently, the plaintiffs are correct, and Salazar has no authority to assert the attorney client privilege on behalf of any of the corporate clients represented by Mr. Collins in the Kilbourne Action. This standing issue appears to have been remedied, however, by the joinder in Salazar's Motion for Protective Order by Solomon Health Management, LLC d/b/a Solomon Health Services, LLC [Doc. # 143, filed 12/5/2005]; and by Health Care Management Partners, Ltd., and ORCR, Inc. [Doc. # 146, filed 12/6/2005], who were the clients in the Kilbourne Action.

Although the statement repeatedly is made by Salazar in his motion for protective order that he "**never** consented to the disclosure or sharing of privileged attorney-client communications with any third party," see, e.g., Salazar's Motion for Protective Order at pp.5, 6, 9, and 10 (original emphasis), no similar statement is made by the corporate entities in their joinders in Salazar's Motion for Protective Order. Whether Salazar personally consented is

15

irrelevant after December 31, 2000, when he ceased to have any interest in the corporate clients,

of course, pursuant to the Commodity Futures case.

Here, the Privileged Documents were voluntarily disclosed by Solomon Health Services,

LLC, and OCRC, Inc., during the Federal Action.  The only evidence before me indicates that the

disclosures in the Federal Action were undertaken intentionally and to advance the interests of

Solomon Health Services, LLC, and OCRC, Inc.  Specifically, attorneys Mullin and Holland state

in their affidavit:

> The July 27, 2000 letter from Paul Collins to Ari Krausz, David
> Sebbag and Rob Salazar was also voluntarily given to Kathleen
> Mullen by the defendants' attorney, Brad Levine, as part of the
> documents to be relied upon by both the O'Hara defendants and the
> *Kilbourne* plaintiffs in furtherance of the parties' respective
> prosecutions of their individual claims against CNA.  At that time,
> Mr. Levine's firm represented the O'Hara related defendants named
> in the federal insurance lawsuit.  This document, like the May 24,
> 2000 memo by Mr. Collins was directly relevant to the fairness of
> the award entered by Judge Barr in the O'Hara arbitration matter
> because it was the litigation valuation of the *Kilbourne* plaintiffs'
> claim of O'Hara defendants' own counsel.  As such, it was
> important evidence in support of the plaintiffs in interventions
> claims in the insurance bad faith case.  As the defendants under the
> Bashor agreement had a duty of cooperation in the prosecution of
> plaintiffs in interventions' claims, they were obligated to assist in
> proving the fair value of the arbitrated claims, which resulted in an
> award that was entered as a judgment against in the *Kilbourne* case
> by Judge Gloria Rivera.  This July 27, 2000 letter was therefore
> marked as Plaintiffs in Intervention Deposition Exhibit # 126 in the
> federal insurance litigation. . . .
>
> These two Paul Collins' memos were also provided to Richard
> Podoll, personal counsel to and litigation counsel for O'Hara
> defendants in the insurance case as a part of the official deposition
> exhibit notebooks prior to the use of these documents in
> depositions of CNA witnesses in the federal lawsuit.  They were
> respectively marked as Exhibits 118 and 126.  Not only did Mr.
> Podoll not object to the use of these documents on the grounds that

> they were privileged on any grounds [sic], but Mr. Podoll himself
> independently made repeated use of those notebooks in the course
> of his own examinations of the witnesses in the bad faith federal
> insurance lawsuit.

*Plaintiffs' Opposition*, Exh.1 to Att.2 at ¶¶4-5.

A waiver occurred even though the disclosures apparently were made by lawyers and not by the clients themselves, and even though Salazar asserts, equivocally, that the disclosures were made "in what *appears to be* a breach of the attorney-client relationship."  Salazar's Motion for Protective Order at p.2 (emphasis added).  Under similar facts, the Tenth Circuit Court of Appeals has held that a waiver occurred, ruling:

> In this case Bump's attorney gave information acquired from his
> client to the government.  Bump makes no showing that the
> lawyer's disclosures were without his consent, or that he
> communicated the information to the attorney with the intention it
> be kept secret.  The burden of proving a communication is
> privileged is upon the person asserting the privilege.

United States v. Bump 605 F.2d 548, 551 (10th Cir. 1970).  Similarly here, there is no showing that the disclosure of the Privileged Documents was made without the consent of the clients-- Solomon Health Services, LLC, and OCRC, Inc.

Salazar admits that the Privileged Documents were "shared with" CNA, the insurance company for Mr. Collins' clients.  He asserts, however, that the privilege was not thereby waived because Health Care Management Partners, Ltd.; ORCR, Inc.; Solomon Health Services, LLC; and Solomon Health Management, LLC, and their insurer shared a common interest, citing Metro Wastewater Reclamation Dist. v. Continental Casualty Co., 142 F.R.D. 471, 476 (D. Colo. 1992).  Regardless, however, disclosure of the Privileged Documents to the Kilbourne plaintiffs

in the Federal Action did not involve a common interest and does constitute a waiver of the attorney client privilege.

Having once made a purposeful disclosure of the Privileged Documents, for apparently self-serving purposes, Solomon Health Services, LLC, and OCRC, Inc., may not now attempt to reassert the privilege:

> There are many instances where a party has revealed confidential information and then in some other proceeding or context seeks to reassert confidentiality. Once the confidential material is in the public domain, particularly if it has come to be in the public domain by virtue of some affirmative act or failure to take adequate precautions by the holder of the privilege, courts generally reason that it is by definition no longer confidential. They hold that a waiver has occurred.
>
> *   *   *
>
> Human nature being what it is, parties may sometimes voluntarily disclose privileged matters in certain contexts and then try to retrieve the privilege in others. Courts generally refuse to permit such selective waiver and manipulative use of the privilege.

Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 292, 295 (4th ed. 2001).

Holders of the attorney client privilege previously have voluntarily disclosed the Privileged Documents, waiving the attorney client privilege. The privilege is gone and may not be reasserted here. Salazar's Motion for Protective Order is DENIED.

### 3.  MOTION TO STRIKE

The plaintiffs summarize their claims as follows:

> Plaintiffs claim that on over 600 days between the beginning of 1997 through the end of 2000, Defendants managed the O'Hara Regional Center for Rehabilitation in such a way that none of the residents in the facility received the care they needed. Plaintiffs allege the substandard care that was provided to the residents of

O'Hara was the direct result of deliberate management decisions made by Defendants.  Plaintiffs assert a variety of claims, and some of those claims (e.g., the claims under the False Claims Act) require some proof of scienter.

*Plaintiffs' Response to Defendants' Motion to Strike Paragraph 110 of Plaintiffs' Second*

*Amended Complaint Pursuant to Fed. R. Civ. P. 12(f)* [Doc. # 185, filed 1/5/2006) (the

"*Response to Motion to Strike*"), pp.1-2.

The defendants move to strike one paragraph of the Second Amended Complaint--¶ 110--

arguing that it is immaterial to the action.  Paragraph 110 states:

That the understaffing problems at O'Hara were the result of the deliberate management practices of the Individual Defendants, particularly Defendant Salazar, is evidenced by similar problems in the Bergen Regional Care Center in New Jersey ("Bergen"). Bergen suffered from similar quality of care problems related to inadequate staffing after Solomon assumed management of that facility in 1998 under the personal supervision of Defendant Salazar.

*Second Amended Complaint* [Doc. # 128, filed 11/18/2005] at ¶110.

Rule 12(f), Fed. R. Civ. P., authorizes an order striking from any pleading "any redundant,

immaterial, impertinent, or scandalous matter."  The purpose of Rule 12(f) is to save the time and

money that would be spent in litigating issues that will not affect the outcome of the case.  Sierra

Club v. young Life Campaign, Inc., 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001).  Motions to

strike are granted only where the allegations have no bearing on the controversy and the movant

can show prejudice.  Id.  Motions to strike are generally disfavored.  Sierra Club v. Tri-State

Generation and Transmission Ass'n, 173 F.R.D. 275, 285 (D. Colo. 1997).

An allegation is immaterial and may be stricken under Rule 12(f) only where it has no

possible bearing on the controversy.  Id.  Where there is doubt about whether an allegation has a

possible bearing on the controversy, the issue should be deferred to trial.  <u>Gates Energy Products, Inc. v. Yuasa Battery Co., Ltd.</u>, 599 F. Supp. 368, 375 (D. Colo. 1983).

Contrary to the defendants' arguments, the allegations of ¶110 are highly relevant to the claims asserted here.  As the plaintiffs argue in opposition to the Motion to Strike:

> Paragraph 110 indicates that the deliberate management practices of Defendants Salazar and Solomon caused the inadequate nurse staffing problems at O'Hara, and that this can be shown by the fact that their management practices led to strikingly similar problems of inadequate nurse staffing at another facility they also managed (Bergen).

*Response to Motion to Strike* at p.6.  The allegations of ¶110 go directly to the issue of the defendants' knowledge of and responsibility for the management decisions which are alleged to have led to inadequate staffing.

The Motion to Strike is DENIED.

## 4.  MOTION TO COMPEL TESTIMONY

The plaintiffs seek an order compelling Sally J. Scaman "to give testimony and information, which she refuses to give or provide on the basis of her Fifth Amendment privilege against self-incrimination."  Motion to Compel Testimony, p.1.  The Motion to Compel Testimony is made pursuant to 18 U.S.C. §§ 6001 et seq., which provide that a witness so compelled is granted immunity from prosecution based on the testimony and any information directly or indirectly derived from the testimony.

The Motion to Compel is made on the request of the United States Attorney for the District of Colorado, and the request is approved by the Deputy Assistant Attorney General, all as

required by 18 U.S.C. § 6003.  The request is in the proper form.[7]

No response to the Motion to Compel Testimony has been filed.

The Motion to Compel Testimony is GRANTED.  Sally J. Scaman is ordered to give testimony and information in this action.  Thereafter, however, no testimony or other information compelled under this Order (or any information directly or indirectly derived from such testimony or other information) may be used against Sally J. Scaman in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with this order.

## 5.  PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Plaintiffs' Motion for Protective Order seeks relief in two forms: first, permission for the deposition of Sally Scaman to occur after December 21, 2005, and at a time when the witness is available to give testimony on consecutive days; and second, that Ms. Scaman's deposition not be limited to seven hours but instead extend from day to day until completed.  Plaintiffs' Motion to Compel, ¶¶ 2, 5.  The plaintiffs do not provide an estimate of the amount of time they expect Ms. Scaman's deposition to require, and their statement of cause to extend the deposition is limited to the facts that she "is an important witness in the case, and has many areas of knowledge regarding the operation of Solomon Health Management, LLC, the actions of Defendant Salazar, and other defendants" and that "it can be reasonably anticipated that contentious issues may arise that will prolong the deposition."  Plaintiffs' Motion to Compel at ¶5.

December 21, 2005, has come and gone.  Consequently, the Plaintiffs' Motion for

---

[7]A district court has no discretion to deny a request by the United States Attorney that a witness be granted immunity under 18 U.S.C. §§ 6003, so long as the request is proper in form. United States v. Hollinger, 553 F.2d 535, 548 (7th Cir. 1977).  The function of the district court in these proceedings has been characterized as "largely ministerial."  In re Perlin, 589 F.2d 260, 269 (7th Cir. 1978).

Protective Order is GRANTED insofar as it seeks leave to conduct Ms. Scaman's deposition after that date.

Although I will allow the parties a reasonable period of time and more than seven hours to depose Ms. Scaman, who admittedly is an important witness in the case, I am disinclined to allow a deposition which extends from day to day until completed, but is otherwise unlimited. That part of the Plaintiffs' Motion for Protective Order is DENIED without prejudice. The parties are directed to confer and submit a proposal which allows sufficient but not an unreasonable period of time for each party to examine Ms. Scaman.

## CONCLUSION

IT IS ORDERED that Salazar's Motion to Compel is GRANTED IN PART and DENIED IN PART as follows:

GRANTED to require the plaintiffs to prepare a privilege log which describes the nature of the documents and communications withheld on a claim of privilege or immunity in a manner that enables the defendants to assess the applicability of the privilege or immunity claim and which establishes that each element of the privilege or immunity is present with respect to the materials withheld. The privilege log shall be provided to the defendants on or before September 8, 2006; and

DENIED in all other respects.

IT IS FURTHER ORDERED that Salazar's Motion for Protective Order is DENIED.

IT IS FURTHER ORDERED that the Motion to Strike is DENIED.

IT IS FURTHER ORDERED that the Motion to Compel Testimony is GRANTED.  Sally J. Scaman is ordered to give testimony and information in this action.  Thereafter, however, no testimony or other information compelled under this Order (or any information directly or indirectly derived from such testimony or other information) may be used against Sally J. Scaman in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with this order.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Protective Order is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART as follows:

GRANTED to permit the deposition of Sally J. Scaman to occur on a date after December 21, 2005; and

DENIED WITHOUT PREJUDICE to allow the deposition of Ms. Scaman to exceed seven hours and to proceed from day to day until completed.  Instead, the parties are directed to confer and submit a proposal which allows sufficient but not an unreasonable period of time for each party to examine Ms. Scaman.

Dated August 17, 2006.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge